UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

T.T., by and through his guardian ad litem, T.M.,

Plaintiff,

v.

BELLEVUE SCHOOL DISTRICT, a
Washington municipal corporation,

Defendant.

CASE NO. C08-0365-JCC

ORDER

This matter comes before the Court on Defendant's Motion for Summary Judgment (Dkt. No. 16), Plaintiff's Response (Dkt. No. 25), and Defendant's Amended Reply (Dkt. No. 35); Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 18), Defendant's Response (Dkt. No. 24), and Plaintiff's Reply (Dkt. No. 31). The Court has carefully considered these documents, their supporting declarations and exhibits, and the balance of relevant materials in the case file, and has determined that oral argument is not necessary. For the reasons explained below, the Court finds and rules as follows.

**I.    BACKGROUND**

This is a civil rights action brought by Plaintiff T.T., by and through his mother and guardian ad litem, T.M., against Defendant Bellevue School District. T.T. was enrolled in the Bellevue School District ("the school district") as a 10th grade student at Newport High School from the beginning of the

ORDER – 1

2007–08 school year until his emergency expulsion on October 25, 2007. (T.M. Decl. ¶¶ 3–4 (Dkt. No. 19 at 1).) T.T. was ultimately permitted to return to another high school in the district, Robinswood High School, after missing fifty-five school days. (*Id.* ¶ 4.) Plaintiff alleges that his emergency expulsion and long-term suspension from the school district violated his constitutional due process rights and state law.

T.T.'s emergency expulsion was precipitated by a written note indicating that T.T. was involved in the use of drugs near school property. On October 22, 2007, the school district received a written note from an employee of a dental office located near Newport High School. The note stated:

> On Tuesday, October 9, 2007, around 2:30 or 2:45, we heard talking under the building (lower parking lot). Dr. Holman heard them and brought it to the attention of Mary Dennis, they observed high school students standing below the window talking and smoking. She told a couple other employees that they were down there smoking on our property. Mary observed a light-skinned Black male [tall with bigger jacket on] with red-tipped dreadlocks pull[] out a pipe from his jacket pocket. Then he pulled out a small, clear plastic container with a white metal top containing a green substance in it. He took small pieces out of the container and placed them in the pipe and started to light it with a cigarette lighter. Mary Dennis knocked on the window and pointed at them and they took off in a hurry.

(Oct. 9 Note (Dkt. No. 8-7 at 2).) A dental office employee identified T.T. as the person with the pipe by looking at photos in the high school yearbook. (Def. Interrogs. Resp. 4 (Dkt. No. 16-3 at 5).)

On October 23, 2007, the principal of Newport High School, Patricia Siegwarth, asked T.T. about the occurrence, and T.T. denied any illegal involvement in the incident. (*Id.*) On October 25, 2007, Siegwarth received a verbal report from a second person at the dental office who witnessed the incident detailed in the note. (*Id.* at 4–5.) That same day, Siegwarth issued a notice of disciplinary action to T.T. for his second violation of the school district's controlled substances policy.[1] (Incident No. 399 (Dkt. No. 16-2 at 11).) T.T.'s violation was described as follows: "Observed in possession of pipe and substance that appeared to be marijuana (in baggy, took out of baggy, prepared to light in pipe)." (*Id.*) The notice

---

[1] On May 3, 2006, T.T. received a ten-day suspension for his first violation of the controlled substances policy after he admitted to smoking marijuana near campus and had marijuana and drug paraphernalia in his possession. (Incident No. 2231 (Dkt. No. 16-2 at 4).) T.T. was permitted to return to school after three days upon completion of a drug/alcohol assessment. (*See id.*)

ORDER – 2

further stated that T.T. was "immediately expelled, pending further investigation and/or determination of final disciplinary action by the Director of Alternative School Programs." (*Id.*)

On the evening of October 25, 2007, T.T.'s mother, T.M., received a voicemail from Siegwarth stating that T.T. was emergency expelled effective immediately. (T.M. Decl. ¶ 10 (Dkt. No. 19 at 4).) The message also indicated that T.M. could pick up the expulsion papers at the school, which she did the following day. (*Id.* ¶¶ 10–11.) On October 29, 2007, T.M. phoned and spoke with the director of alternative school programs, Estelle Collins, and requested an appeal of the emergency expulsion. (*Id.* ¶ 12.) On November 2, 2007, Collins left a voicemail with T.M. tentatively scheduling a meeting on T.T.'s appeal for November 6, 2007. (*Id.*) Collins and T.M. spoke on the phone on November 4, and again on November 5, confirming the November 6 meeting. (Nov. 16 Tr. 29–30 (Dkt. No. 8-2 at 31–32).)

A meeting with Collins, T.T., and T.M. was held on November 6, 2007. At that meeting, Collins and T.T. discussed his considerable record of school misconduct and attendant suspensions.[2] (Nov. 16 Tr. 31–32 (Dkt. No. 8-2 at 33–34).) T.T. was given the opportunity to explain his side of the story and again denied being involved in the incident near the dentist office. (*Id.*; Def. Interrogs. Resp. 5 (Dkt. No. 16-3 at 6).) Collins informed T.T. and T.M. that she had decided to convert the emergency expulsion to an indefinite expulsion. (T.M. Decl. ¶ 15 (Dkt. No. 19 at 4).) Collins further informed them that she would be sending paperwork confirming her decision and that T.T. could petition the school district in late January 2008 to demonstrate his desire to return to school. (*Id.*) She indicated that if T.T. satisfied certain conditions and re-enrolled, he would be permitted to attend Robinswood High School but not Newport High School. (*Id.*) Following the meeting, Collins issued a disciplinary action converting T.T.'s emergency expulsion into an indefinite expulsion with the provision that T.T. could petition for re-enrollment in late January. (*See* Incident No. 349 ( Dkt. No. 16-2 at 12–13).)

---

[2] Between May 2006 and the emergency expulsion on October 25, 2007, T.T. received six disciplinary actions for various forms of school misconduct, resulting in short-term suspensions ranging from one to five days. (*See* Incident Nos. 2231, 2794, 2584, 3074, 3404, & 250 (Dkt. No. 16-2 at 4–9).)

ORDER – 3

The next day, November 7, 2007, T.M. faxed a letter to Collins formally appealing her son's indefinite expulsion and requesting a copy of all documents to be used at the appeal hearing. (Nov. 7 Fax (Dkt. No. 19-2 at 6).) The school district's hearing officer on student discipline matters, Glenn Hasslinger, called T.M. on November 8, 2007, and informed her that T.T.'s appeal hearing was set for November 16, 2007. (T.M. Decl. ¶ 17 (Dkt. No. 19 at 6).)

On November 16, 2007, Hassingler conducted a hearing on T.T.'s appeal of his expulsion. (*Id.* ¶ 20.) Also present at the hearing were Collins, Siegwarth, T.T., and T.M. (*Id.*) The hearing was tape recorded. At the hearing, Siegwarth presented the evidence of T.T.'s involvement in the apparent use of drugs, which consisted of the written note and verbal confirmations received from the dental office employees. (Nov. 16 Tr. 7–9 (Dkt. No. 8-2 at 9–11).) T.M. asked Siegwarth numerous questions regarding the veracity of the evidence and accusations against her son. (*See id.* at 16–27.) Siegwarth explained that the dental office employees had identified T.T. from his picture in the school yearbook. (*Id.* at 19–20.) At the end of the hearing, T.M. declined to permit her son to answer any questions because she was concerned about potential criminal charges against him. (*Id.* at 37.) The hearing officer concluded the hearing by stating that T.T. was to remain out of school pending his decision. (*Id.* at 39.)

The hearing officer issued a three-page report on November 20, 2007. (Hr'g Officer Report (Dkt. No. 19-2 at 10–13).) The report stated: "Since there is no evidence to the contrary, and considering [T.T.'s] discipline history, the Hearing Officer upholds the decision to expel." (*Id.* at 3.) T.M. formally appealed Hassingler's decision on November 27, 2007. On November 30, 2007, T.M. received a letter setting the date of T.T.'s appeal. (T.M. Decl. ¶ 25 (Dkt. No. 19 at 8).) Thereafter, T.M. wrote to the assistant superintendent of the school district, Vicky Murray, and Hassingler requesting that T.T. be allowed to re-enter school immediately during the appeal process. (*Id.* ¶ 26.) On December 5, 2007, Murray called T.M. back and left a voicemail indicating that T.T. would not be allowed to return to school pending the appeal hearing. (*Id.* at 27.)

On December 14, 2007, the Disciplinary Appeals Counsel (the "DAC") held a hearing on T.T.'s

ORDER – 4

expulsion (*Id.* ¶ 28.) The DAC was composed of Chris Marks, a school board member; Keith Schact, assistant principal at Bellevue High School; Ede Patterson, assistant principal at Interlake High School; and Vicky Murray, who acted as the hearing officer. (*Id.*) Hassingler appeared and presented the school district's case against T.T. (*Id.* ¶ 30.) T.M. again did not allow her son to testify due to her concern about criminal implications. (*Id.* ¶ 31.) She did, however, permit the DAC to speak with her son at the end of the hearing with the tape recorder turned off so that the conversation would be off the record. (*Id.* ¶ 32.)

On December 22, 2007, T.M. received a letter dated December 19, 2007, stating that the full text of the DAC decision would be provided before "the first of the year but in summary Ms. Murray has upheld [T.T.'s] expulsion." (Dec. 19 Letter (Dkt. No. 19-2 at 22).) T.M. sent a letter to Murray on January 10, 2008, noting that she had not yet received any findings from the DAC decision and reiterated her request that T.T. be allowed back into school. (Jan. 10 Letter (Dkt. No. 19-2 at 23).) On January 16, 2008, T.M. received a letter from Murray describing the DAC's findings and decision. (Jan. 14 Letter (Dkt. No. 19-2 at 24–25).) The letter stated that the DAC had changed T.T.'s discipline from expulsion to a long-term suspension to end on January 28, 2008. (*Id.*) The letter stated that, upon expiration of the suspension, T.T. could enroll in Robinswood High School but was not allowed to return to Newport High School at that time. (*Id.*)

On February 13, 2008, this appeal and action was filed in King County Superior Court. The school district subsequently removed the action to this Court. Both parties now move for summary judgment.

**II.  LEGAL STANDARD**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi*

ORDER – 5

*v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24.

## III.  ANALYSIS

Plaintiff's Complaint asserts the following claims for relief: (1) denial of procedural due process, (2) denial of substantive procedural due process, (3) wrongful suspension and expulsion, (4) violation of the Washington Administrative Procedures Act ("APA"), WASH. REV. CODE § 34.05.570, (5) violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983,[3] (6) denial of an equal educational opportunity under article IX, section 1 of the Washington Constitution, and (7) violation of the appearance of fairness doctrine. (Compl. ¶¶ 65–83 (Dkt. No. 1 at 26–29).) The parties have filed cross-motions for summary judgment. Defendant school district requests that the Court dismiss all of Plaintiff's claims as a matter of law whereas Plaintiff requests that the Court find his procedural due process rights were violated as a matter of law. Although Plaintiff asserts numerous claims for relief, the heart of this dispute revolves around whether the school district afforded T.T. adequate procedural due process.

---

[3] Section 1983 provides a federal remedy for constitutional violations and is not an independent source of primary rights. *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) ("Section 1983 does not create any substantive rights, but is instead a vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials."). Accordingly, Plaintiff's Section 1983 claim depends upon whether his constitutional due process rights were violated.

ORDER – 6

### A. Procedural Due Process

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. A procedural due process claim is examined in two steps: "the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted). Property interests protected by the Fourteenth Amendment are created and defined by "an independent source such as state statutes or rules entitling citizens to certain benefits." *Goss v. Lopez*, 419 U.S. 565, 572–73 (1973) (*citing Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).

Defendant does not contest that T.T. had a protected property interest in attending public high school. (Def. Mot. 11 (Dkt. No. 17).) The Washington Constitution provides that the State must "make ample provision for the education of all children residing within its borders." WASH. CONST. art. IX, § 1. State law also provides that attendance in Washington public schools is mandatory for children from eight through seventeen years of age, unless the child is enrolled in private school or is home-schooled. WASH. REV. CODE § 28A.225.010. Having provided for the right to public education, Washington "may not withdraw that right on grounds of [student] misconduct, absent fundamentally fair procedures to determine whether the misconduct has occurred." *Goss*, 419 U.S. at 574. "Once it is determined that process applies, the question remains what process is due." *Morrissey v .Brewer*, 408 U.S. 471, 481 (1972). T.T.'s procedural due process claim therefore turns on whether the procedures employed by the school district in expelling and suspending him were "constitutionally sufficient."

In *Goss v. Lopez*, the Supreme Court addressed the due process protections afforded to students facing suspensions for misconduct. 419 U.S. 565. The Court first noted that a student's property interest in a public education "may not be taken away for misconduct without adherence to the minimum procedures required" by the Due Process Clause. *Id.* at 574. The Court held, "[D]ue process requires, in

ORDER – 7

connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Id.* at 581. Cases involving "[l]onger suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures." *Id.* at 584. In every school misconduct case, however, the purpose of the procedures must be to avoid "unfair or mistaken findings of misconduct and arbitrary exclusions from school." *Id.* at 581.

### 1. **Emergency Expulsion**

Plaintiff's emergency expulsion from Newport High School on October 25, 2007, complied with the minimum due process requirements articulated in *Goss*. Prior to the emergency expulsion, the principal, Patricia Siegwarth, met with both T.T. and his mother about T.T.'s alleged involvement in the use of drugs near school property. (T.M. Decl. ¶ 7 (Dkt. No. 19 at 2).) At that meeting, Siegwarth told T.T. and T.M. that the allegations were based on an incident detailed in a written note received from a nearby dentist office. (*See id.* ¶ 8.) Siegwarth further informed them that someone at the dentist office had identified T.T. as the person with the drug paraphernalia by looking at pictures in a yearbook. (*Id.*) T.T. responded to the allegations by denying any illegal involvement in the incident. (*Id.* ¶ 7.) Subsequently, Siegwarth received a verbal report from a second person at the dental office who witnessed the incident detailed in the note. (Def. Interrogs. Resp. 4–5 (Dkt. No. 16-3 at 5–6).) That same day, Siegwarth issued the disciplinary action to emergency expel T.T. based on his second violation of the school district's controlled substances policy. (*See* Incident No. 399 (Dkt. No. 16-2 at 11).) Siegwarth then called and left a voicemail on T.T.'s home phone stating that T.T. was emergency expelled effective immediately. (T.M. Decl. ¶ 10 (Dkt. No. 19 at 4).) This sequence of events demonstrates that T.T. was given notice of the charges against him, a brief explanation of the evidence obtained by the school, and an opportunity to present his side of the story. Such "informal give-and-take between student and disciplinarian, preferably prior to the suspension," is all that due process required here. *See Goss*, 419

ORDER – 8

U.S. at 584.[4] Therefore, prior to T.T.'s emergency expulsion, the school district provided sufficient "rudimentary precautions" to comport with due process. *See id.* at 581.

## 2. Subsequent Expulsion and Long-Term Suspension

Plaintiff admits that the emergency expulsion process itself may not have violated due process. (*See* Resp. 11 (Dkt. No. 25 at 11).)[5] Plaintiff contends, however, that the due process violation occurred when the school district converted T.T.'s emergency expulsion into an indefinite expulsion and then a long-term suspension without adequate notice or opportunity to be heard. (*Id.* at 6–11.) Plaintiff's primary contention regarding inadequate process is that the school district failed to provide notice and a hearing prior to the imposition of T.T.'s indefinite expulsion on November 6, 2007. (*Id.*)

The undisputed facts, however, establish that T.T. did receive notice and an informal opportunity to be heard prior to the imposition of the indefinite expulsion on November 6, 2007. Shortly after the school district imposed the emergency expulsion, T.M. picked up the paperwork and then called the school district's director of alternative school programs, Estelle Collins, to request an appeal. (T.M. Decl. ¶¶ 11–12 (Dkt. No. 19 at 4).) After Collins and T.M. exchanged a number of phone calls regarding when a hearing on the emergency expulsion would be practicable, a meeting with T.T., T.M., and Collins, was scheduled for November 6, 2007. (*Id.* ¶¶ 12–13.) At that meeting, Collins and T.T. discussed his considerable record of school misconduct and attendant suspensions. (Nov. 16 Tr. 31–32 (Dkt. No. 8-2 at 33–34).) T.T. was given the opportunity to explain his side of the story and again denied being involved in the incident near the dentist office. (Def. Interrogs. Resp. 5 (Dkt. No. 16-3 at 6).) Following

---

[4] As a general rule, "notice and hearing should precede removal of the student from school." *Goss*, 419 U.S. at 582. However, a student whose presence poses "an ongoing threat of disrupting the academic process may be immediately removed from school," and "the necessary notice and rudimentary hearing should follow as soon as practicable." *Id.* at 582–83.

[5] "It may be that the school district complied with procedural due process in emergency expelling the student on October 25, 2007. However its actions afterwards, in imposing an indefinite non-emergent expulsion and then a long-term suspension . . . violated the requirements of procedural due process." (Resp. 11 (Dkt. No. 25).)

ORDER – 9

the meeting, Collins issued a disciplinary action converting T.T.'s emergency expulsion into an indefinite expulsion with the provision that T.T. could petition for re-enrollment in late January. (*See* Incident No. 349 ( Dkt. No. 16-2 at 12–13).) By providing T.T. with "notice and an opportunity to respond" to the allegations of drug use prior to expulsion, the school district afforded T.T. with the "essential requirements of due process." *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).

Nevertheless, Plaintiff objects that he did not receive *written* notice prior to the November 6, 2007 conversion, and that the discussion with Collins, T.T., and T.M. was only an informal meeting and did not qualify as a "hearing." (*See* Resp. 10 (Dkt. No. 25).) Plaintiff's argument rests on an overly formalistic and rigid interpretation of the Due Process Clause. The Supreme Court has repeatedly emphasized that "the interpretation and application of the Due Process Clause are intensely practical matters and that 'the very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.'" *Goss*, 419 U.S. at 577 (*quoting Cafeteria & Rest. Workers Union, Local 473 v. McElroy*, 367 U.S. 886, 895 (1961)). Prior to the November 6 meeting, T.T.'s mother received the written paperwork on the emergency expulsion and exchanged numerous phone calls with Collins to schedule the meeting. Plaintiff therefore received written notice of the charges against him and oral notice, through his mother, of the meeting at which he could contest the charges. Moreover, T.T. was given a formal hearing on November 16, 2007, before his expulsion was affirmed and then another formal hearing on his appeal before the DAC on December 14, 2007. Thus, although the November 6 meeting may not have been a formal hearing with presentation of evidence and arguments, Plaintiff was subsequently provided with two such formal hearings. *See Loudermill*, 470 U.S. at 547 n.12 (explaining that "the existence of post-termination procedures is relevant to the necessary scope of pretermination procedures").

Plaintiff's procedural due process claim relies heavily on his assertion that the violation of state regulations regarding student discipline establishes a violation under the Due Process Clause. (*See* Resp. 11–16 (Dkt. No. 25); *see also* Pl. Mot. 16–19 (Dkt. No. 18); Reply 5–8 (Dkt. No. 31).) Plaintiff

ORDER – 10

contends that because the school district failed to comply with certain state administrative regulations, it also violated constitutional due process. Plaintiff conflates two distinct concepts: the property interests subject to the protections of the Due Process Clause and the procedures required for a deprivation of such interests. The Due Process Clause protections certain *substantive* rights—life, liberty, and property—from deprivation except pursuant to constitutionally adequate *procedures*. *Loudermill*, 470 U.S. at 541. "The categories of substance and procedure are distinct." *Id.* Thus, although state law defines what property interests are subject to the requirements of due process, it does not define the procedures that must be followed in depriving an individual of such an interest—those procedural requirements flow from the Due Process Clause itself.

When the minimal due process requirements of adequate notice and hearing have been afforded, a claim that state regulations or agency policies have been violated does not sustain an action for violation of procedural due process. *Goodrich v. Newport News Sch. Bd.*, 743 F.2d 225, 227 (4th Cir. 1984); *see McDarby v. Dinkins*, 907 F.2d 1334, 1337 (2d Cir. 1990) ("A breach of procedural requirements does not create a due process violation unless an individual was denied a fair forum for protecting his state rights." (internal quotation omitted)); *Eguia v. Tompkins*, 756 F.2d 1130, 1137–38 n.11 (5th Cir. 1985) ("The state's breach of its own procedures in the deprivation of a property interest rises to the level of a constitutional violation only when the state's actions do not comport with the process that would be required in the absence of the state statute."); *Atencio v. Bd. of Educ.*, 658 F.2d 774 (10th Cir. 1981) ("[A] breach of state procedural requirements is not, in of itself, a violation of the Due Process Clause"); *Bates v. Sponberg*, 547 F.2d 325, 329–30 (6th Cir. 1976) ("[I]t is only when an agency's disregard of its own rules results in procedure which in itself impinges upon due process rights a federal court should intervene in the decisional processes of state institutions."); *see also Bd. of Curators v. Horowitz*, 435 U.S. 78, 92 n.8 (1978). Because T.T. was afforded the essential due process requirements of notice and an opportunity to be heard, including two formal hearings with presentation of arguments and evidence, any deficiencies in the procedures with respect to state regulations or policies does not rise to the level of

ORDER – 11

a constitutional due process violation.

In sum, the school district afforded T.T. sufficient procedural protections to comport with due process and avoid "unfair or mistaken findings of misconduct and arbitrary exclusions from school." *See Goss*, 419 U.S. at 581. T.T. was given multiple opportunities throughout the process, from the initial emergency expulsion to the final long-term suspension, to challenge the allegations and provide his version of the events. *See id.* at 583 (noting that "requiring effective notice and informal hearing permitting the student to give his version of the events will provide a meaningful hedge against erroneous action"). The school district also provided two formal hearings where school administrators and board members independently reviewed the issuance of the indefinite expulsion and ultimately reduced it to a long-term suspension. *See Loudermill*, 470 U.S. at 547–48 (explaining that "a pretermination opportunity to respond, coupled with post-termination administrative procedures" would provide sufficient due process). Plaintiff has therefore failed to present sufficient evidence to survive summary judgment on his claim for a violation of procedural due process. Accordingly, Defendant's motion for summary judgment on this issue is granted and Plaintiff's motion for partial summary judgment on this issue is denied.[6]

### B. Substantive Due Process

Plaintiff also claims that the school district violated substantive due process because the imposition of a fifty-five school day suspension was "unduly harsh and severe" and "arbitrary and capricious." (Resp. 16–17 (Dkt. No. 25).)

"The due process clause includes a substantive component which guards against arbitrary and capricious government action, even when the decision to take that action is made through procedures that are in themselves constitutionally adequate." *Halverson v. Skagit County*, 42 F.3d 1257, 1261 (9th Cir. 1994) (*quoting Sinoloa Lake Owners Assoc. v. Simi Valley*, 882 F.2d 1398, 1407 (9th Cir. 1989)). The

---

[6] Although Plaintiff's Motion for Partial Summary Judgment was filed after the date set by local rule, *see* Local Rules W.D. Wash. CR 16(g), the Court considered all the issues and arguments raised in the pleadings related to that motion.

ORDER – 12

right to attend public school, however, is not a fundamental right or liberty interest. *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 37–40 (1973); *see Seal v. Morgan*, 229 F.3d 567, 575 (6th Cir. 2000); *Bowers v. NCAA*, 475 F.3d 524, 553 (3d Cir. 2007). Where, as here, the challenged governmental action does not affect fundamental rights, it will be upheld if it is rationally related to a legitimate state interest. *Halverson*, 42 F.3d at 1262. In such cases, the substantive due process analysis concerns "the rationality of a government action regardless of its impact." *Id.* (*quoting Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1238 (9th Cir. 1994)). Accordingly, in cases involving school discipline, substantive due process is violated only where there is no "rational relationship between the punishment and the offense." *Seal*, 229 F.3d at 575 (*quoting Rosa R. v. Connelly*, 889 F.2d 435, 439 (2d Cir. 1989); *see Brewer v. Austin Indep. Sch. Dist.*, 779 F.2d 260, 264 (5th Cir. 1985).

In examining Plaintiff's substantive due process claim against the school district, the Court remains cognizant of the Supreme Court's admonition:

> It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion. Public high school students do have substantive and procedural rights while at school. But § 1983 does not extend the right to relitigate in federal court evidentiary questions arising in school disciplinary proceedings or the proper construction of school regulations. The system of public education that has evolved in this Nation relies necessarily upon the discretion and judgment of school administrators and school board members, and § 1983 was not intended to be a vehicle for federal-court corrections of errors in the exercise of that discretion which do not rise to the level of violations of specific constitutional guarantees.

*Wood v. Strickland*, 420 U.S. 308, 326 (1975) (citations omitted).

To survive summary judgment on his substantive due process claim, Plaintiff "shoulder[s] a heavy burden" and "must demonstrate the irrational nature of [Defendant's] actions by showing that [Defendant] *could* have no legitimate reason for its decision." *Halverson*, 42 F.3d at 1262 (citation and internal quotation omitted). Plaintiff has not met this heavy burden. The school district undeniably has a legitimate interest in preventing drug use near school and preventing disruption of the educational process. The school district's decision to issue a long-term suspension based on T.T.'s second violation of the controlled substances policy was rationally related to these interests. Absent evidence of arbitrary

ORDER – 13

decision-making, the Court is not inclined to second-guess the discretion and judgment of the multiple school administrators and school board members who concluded that a long-term suspension was appropriate after examining evidence of T.T.'s second controlled substance violation and his extensive history of school misconduct. Plaintiff's substantive due process claim therefore fails as a matter of law.

### C. Equal Education Opportunity under the Washington Constitution

Plaintiff's Complaint alleges that his expulsion and suspension violated his right to equal education opportunity under article IX, section 1 of the Washington Constitution, which provides, "It is the paramount duty of the State to make ample provision for the education of all children residing within its borders, without distinction or preference on account of race, color, caste, or sex." (Compl. ¶¶ 77–80 (Dkt. No. 1 at 28).) However, Plaintiff has failed to advance any legal authority to suggest that his temporary exclusion from school based on his misconduct somehow violated the State's constitutional duty to "make ample provision" for his education. Nor has Plaintiff proffered any evidence or allegation that he was denied an educational opportunity due to his "race, color, caste, or sex." In addition, Plaintiff has failed to establish that Washington courts would even recognize a private cause of action for an alleged violation of article IX, section 1 of the Washington Constitution. *See, e.g.*, *Reid v. Pierce County*, 961 P.2d 333, 343 (Wash. 1998) (declining to recognizing a constitutional cause of action); *Blinka v. Wash. State Bar Ass'n*, 36 P.3d 1094, 1102 (Wash. Ct. App. 2001) (noting "Washington courts' consistent refusals to recognize a cause of action in tort for constitutional violations"). Accordingly, Plaintiff's claim for relief under article IX, section 1 of the Washington Constitution fails as a matter of law.

### D. Additional Claims

Defendant argues that Plaintiff's claim for wrongful expulsion and suspension from school should be dismissed because no legal authority for such a claim exists under Washington law. (Mot. 18 (Dkt. No. 17).) In his Response, Plaintiff does not even address his claim for wrongful expulsion and suspension, and he offers no legal authority to sustain such a claim in this context. Regardless, no evidence has been

ORDER – 14

presented to support a finding that expelling Plaintiff based on his second violation of the school's controlled substances policy was somehow wrongful. Accordingly, summary judgment dismissal of Plaintiff's claim for wrongful expulsion and suspension is appropriate.

Defendant also argues that Plaintiff's claim under Washington's APA fails as a matter of law because appeals from school board actions are governed by Washington Revised Code section 28A.645.010, and not the APA. Plaintiff also fails to offer any support for his claim under the state APA and therefore summary judgment on this claim is appropriate.

Finally, Plaintiff has failed to provide any evidence to support his claim that the appearance of fairness doctrine was violated. In responding to Defendant's motion for summary judgment, Plaintiff cannot merely rely on the allegations in his Complaint and instead must show that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 250. Because Plaintiff has failed to do so, his claim for violation of the appearance of fairness doctrine will be dismissed.

## IV.  CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendant's Motion for Summary Judgment (Dkt. No. 16) and DENIES Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 18). Because Plaintiff has no remaining viable claims for relief, the Court DISMISSES the Complaint and DIRECTS the Clerk to close the case.

SO ORDERED this 24th day of March, 2009.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER – 15