HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

T.T.,

          Plaintiff,

      v.

BELLEVUE SCHOOL DISTRICT,

          Defendant.

CASE NO. C08-365RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on cross-motions for summary judgment (Dkt. ## 52, 58) and on the motion (Dkt. # 61) of Plaintiff T.T. to substitute himself as the Plaintiff in this matter in lieu of his mother, who previously represented his interests. T.T. requested oral argument.  Defendant Bellevue School District (the "District") did not.  In light of the narrow mandate from the Ninth Circuit Court of Appeals, and the extensive prior proceedings in this matter, the court finds oral argument unnecessary.  For the reasons stated herein, the court GRANTS in part and DENIES in part both summary judgment motions, and GRANTS T.T.'s motion to substitute.

## II.  BACKGROUND

T.T. challenges the District's decision to suspend him from Newport High School in October 2007.  The suspension began with an "emergency expulsion" on October 25. The District did not permit him to attend school again until January 29, 2008, when it allowed him to enroll at Robinswood High School, the District's alternative school.  T.T.

ORDER – 1

1   was a 15-year-old sophomore when the District suspended him.  He turned 18 in January

2   2010.

3       The District suspended T.T. because it concluded that on October 9, 2007, he

4   possessed and attempted to smoke marijuana during school hours outside an office

5   building adjacent to the school.  No District employee saw him or found marijuana in his

6   possession.  Instead, more than two weeks after the incident, two employees of the office

7   building in concert with Greg Mills, Newport's school resource officer, produced a brief

8   written statement.  The statement explained that two employees had seen a "light-skinned

9   Black male" pull a "green substance" out of a "clear plastic container with a white metal

10  top" and attempt to smoke it in a pipe.[1]  The attempt ended when the witnesses knocked

11  on the window through which they observed the incident, causing the "Black male" in

12  question and several friends accompanying him to flee.  Someone (the record does not

13  reflect who) later provided one of the witnesses with a book of photos of Newport

14  students, and he or she apparently identified T.T. as the student who had attempted to

15  smoke the "green substance."

16      Newport Principal Patricia Siegwarth made the initial decision to remove T.T.

17  from school on October 25.  She did not consult with any of the office employees,

18  although she apparently received a voice message from one employee, which added

19  nothing of substance to the written statement.  She consulted briefly with T.T. before

20  making her decision.  T.T. denied any wrongdoing.

21      T.T.'s mother objected promptly, which led to a November 6 meeting with Estelle

22  Collins, the District's director of alternative programs.  She explained that she would

23  suspend T.T. from Newport, but would allow him to apply for admission to Robinswood

24  in January 2008, provided T.T. met certain conditions.  T.T.'s mother's written objection

25  _____

[1] All copies of the statement in the record have two redactions at the bottom that seem to remove
26  the signatures of two witnesses.  The version in the record contains the names of the two
    employees in the body of the statement.  T.T.'s mother declares that the version she was
27  provided in 2007 had all names and identifying information redacted.  T.M. Decl. (Dkt. # 19)
    ¶ 6.  The District provided no evidence to contradict her declaration.

28  ORDER – 2

1   to that decision led to a hearing on November 16 before Glenn Hasslinger, the District

2   hearing officer.  Mr. Hasslinger essentially upheld Ms. Collins' suspension.  T.T.'s

3   mother's prompt written objection led to a December 14 hearing before the District's

4   Disciplinary Appeal Council (the "Appeal Council").  The Appeal Council essentially

5   upheld the suspension.  The District excluded T.T. from school from October 26, 2007

6   through January 28, 2008, after which it admitted him to Robinswood.

7           T.T.'s mother, acting on his behalf, sued in February 2008 in King County

8   Superior Court.  She brought a 42 U.S.C. § 1983 claim contending that the District had

9   violated the Fourteenth Amendment by denying T.T. both procedural and substantive due

10  process.  She also raised a variety of state law claims based, in part, on the District's

11  violation of Washington Administrative Code ("WAC") regulations governing school

12  suspensions.  The District removed the suit to this court.

13          In a March 24, 2009 order, the Honorable John C. Coughenour granted the

14  District's motion for summary judgment on all claims.  T.T. appealed.  In an April 19,

15  2010 memorandum decision, a panel of the Ninth Circuit Court of Appeals affirmed

16  Judge Coughenour's ruling in part, reversed it in part, and remanded for further

17  proceedings.  The panel ruled that T.T. had waived appeal of the judgment as to his state

18  law claims.  Mem. at 4.  As to the § 1983 claims, the panel found that the "district court

19  erred in its consideration of the role of state procedural requirements," and thus remanded

20  for the court "to conduct that analysis in the first instance with the benefit of further fact

21  finding."  Mem. at 2.  The focus of the panel's memorandum was whether the District

22  deprived T.T. of procedural due process by relying throughout the administrative process

23  solely on hearsay as the basis for its conclusion that T.T. had possessed marijuana.

24          On remand, Judge Coughenour recused himself, and the case was assigned

25  randomly to the undersigned judge.  The parties requested the opportunity to provide

26  cross-motions for summary judgment to address all remaining issues.  Those motions are

27

28  ORDER – 3

now before the court, as is T.T.'s motion for the court to substitute him as the Plaintiff because he is no longer a minor.

### III.   ANALYSIS

**A.      The Court Addresses Only A Limited Set of Issues on Remand.**

The court begins by determining what issues are before it on remand.  As noted, Judge Coughenour resolved all of T.T.'s claims, including a claim for violation of his federal substantive due process rights, a claim for violation of his federal procedural due process rights, and a host of state law claims.

The panel did not acknowledge that T.T. raised a substantive due process claim. Mem. at 1 (noting "procedural due process violations arising from [T.T.'s] fifty-five day school suspension").  The court does not know if this is because T.T. did not raise a substantive due process claim on appeal, or whether the panel declined to consider it.  In any event, the panel did not dispose of such a claim or give instructions to address it on remand.  Accordingly, to the extent a substantive due process claim remains, the court reaches the same conclusions that Judge Coughenour did, and grants summary judgment against that claim.

The panel did, however, unambiguously conclude that T.T. waived appeal of summary judgment against all of his state law claims.  Mem. at 4.  The court will not further consider T.T.'s claims that the District violated Washington law.

What remains on remand, then, is T.T.'s claim that the District violated his right to procedural due process.  Even as to that claim, the panel focused on one issue: whether the District deprived T.T. of a right to confront witnesses against him.[2]  The panel noted that the Constitution might directly grant that right, but declined to decide that issue because of a "potentially narrower ground, involving application of state law, for resolving the case."  Mem. at 4.  The narrower ground is "whether T.T. had a property

---

[2] The court will refer repeatedly to the "right to confront witnesses," using that phrase as shorthand for T.T.'s right to require the District to produce witnesses against him for live testimony as well as the right to confront those witnesses.

ORDER – 4

right in the process afforded under Washington law." Mem. at 4.  The panel observed

that two WAC sections set procedures that can "in some instances, entitle a student to

'[q]uestion and confront witnesses.'" Mem. at 3 (quoting WAC § 392-400-270 and

WAC § 392-400-315).  The panel found two factual questions relevant to that

determination:

> In particular, the Code treats the procedures required differently depending
> on the type of appeal the school district has chosen to provide, Wash.
> Admin. Code 392-400-315, and it is unclear from the record which type of
> appeal the [District Appeal Council] was conducting.  The record is also
> unclear whether T.T. requested the opportunity to question or confront his
> accusers. *See* Wash. Admin. Code 392-400-270(2)(c).

Mem. at 3.  The panel explained that "[o]nce further fact finding has resolved these

issues, the district court will be able to consider whether T.T. had a property right in the

process afforded under Washington law." *Id.*

       In contrast to the narrower focus of the panel on appeal, T.T. alleged procedural

due process arising from virtually every aspect of the suspension process.  T.T. contended

that he did not receive adequate notice at many junctures, that he did not receive written

notices, that the District acted too slowly, and that the District violated many more

Washington regulations than just those pertaining to the confrontation of witnesses.

Judge Coughenour granted summary judgment against all of those claims, concluding

that the District had provided constitutionally adequate process.  The panel on appeal did

not address those portions of the prior order.  It mentioned only the confrontation of

witnesses.  The court is not certain if the panel affirmed Judge Coughenour's due process

rulings as to procedural protections other than the right to confront witnesses, or left them

open for further consideration.  In any event, the panel gave no instructions as to

procedural due process claims not based on the confrontation of witnesses.  Accordingly,

to the extent that those claims remain, the court reaches the same conclusions as Judge

Coughenour did, and grants summary judgment against them.

ORDER – 5

1    Doing its best to be faithful to the mandate of the Ninth Circuit, the court limits its

2    inquiry on remand to whether Washington regulations conferred upon T.T. a property

3    interest, within the meaning of the Fourteenth Amendment's Due Process Clause, in

4    T.T.'s right to confront witnesses against him.  That inquiry includes the factual questions

5    the panel identified.  If the court finds no such property interest, it will decide if the

6    Constitution grants T.T. a right to confront witnesses independent of Washington

7    regulations.  The court believes that the panel intended it to revisit only these issues on

8    remand.  Again, to the extent that the panel left open other issues on remand without

9    mentioning them, the court reaches the same conclusions that Judge Coughenour reached.

10   **B.    The Appeal Council Conducted a De Novo Hearing; and T.T.'s Mother
          Requested No Later Than The November 16 Hearing That the District
11        Produce Witnesses.**

12   The court turns first to the two factual questions:  what type of appeal the District

13   Appeal Council was conducting on December 14, 2007; and whether T.T. and his mother

14   requested the opportunity to confront witnesses against him.  In considering those

15   questions, the court applies the familiar summary judgment standard, drawing all

16   inferences from the admissible evidence in the light most favorable to the non-moving

17   party.  *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary

18   judgment is appropriate where there is no genuine issue of material fact and the moving

19   party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving

20   party must initially show the absence of a genuine issue of material fact.  *Celotex Corp. v.*

21   *Catrett*, 477 U.S. 317, 323 (1986).  The opposing party must then show a genuine issue

22   of fact for trial.  *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

23   (1986).  The opposing party must present probative evidence to support its claim or

24   defense.  *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir.

25   1991).  The court defers to neither party in resolving purely legal questions.  *See*

26   *Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).

28   ORDER – 6

As the panel recognized, Washington regulations give a school district appeal council three options when considering a disciplinary appeal. It can render a decision based on the record of the prior hearing and written submissions, it can render a decision after hearing further arguments based on the record, or it can hear the case de novo. WAC § 392-400-315(1)(a)-(c). Only in a de novo hearing do the student and his parents have the right to, among other things, "[q]uestion and confront witnesses." WAC § 392-400-315(2)(a)(ii).

The District concedes that the Appeal Council conducted a de novo hearing, thus giving rise to a right to confront witnesses. Def.'s Mot. (Dkt. # 53) at 4-5. T.T. has no quarrel with the concession. Pltf.'s Opp'n (Dkt. # 69) at 6 n.6, 16 n.23.

T.T's mother requested the opportunity to confront witnesses. Prior to the November 16 hearing, there is no evidence that T.T. made a written or oral request that the three witnesses on whose hearsay testimony his charges were based (Officer Mills and the two office employees) be present at the hearing. There is no question, however, that T.T.'s mother objected to the absence of the witnesses at the hearing. She began questioning Ms. Siegwarth about her lack of personal knowledge. Nov. 16 Tr. at 17 ("Did you personally witness the incident with [T.T.] for which we are here, where the people at the dentist's office have referred to [T.T.] being in possession of things like that? Did you personally witness that?"). She asked Ms. Siegwarth why the District had not produced the witnesses. *Id.* at 18 ("Is there a reason that those witnesses themselves from the dentist's office aren't here today?"). Ms. Siegwarth's only answer was that it was not a "normal practice" to call such witnesses. *Id.* T.T.'s mother asked numerous questions that amply illustrate the pitfalls of the hearsay evidence on which the accusations against her son were based. *Id.* at 18-27. She established that Ms. Siegwarth herself had not spoken to the office employees about the incident. *Id.* at 18-19. She established that Ms. Siegwarth had no personal knowledge of the process by which the witnesses identified T.T. from a book of photographs of Newport students. *Id.* at 20-22.

ORDER – 7

T.T.'s mother pointed out that she had no means to contact the witnesses herself, because the District had redacted their names from their written statement. *Id.* at 23 ("[B]efore this actual hearing itself, I mean, I have no idea who these people are – who these witnesses are."). She established that Ms. Siegwarth had not documented the "verbal statement" she received from one of the witnesses. *Id.* at 27.

The court concludes that by the end of the November 16 hearing, the District had ample notice that T.T. wished to have testimony from the witnesses themselves, rather than through the chain of hearsay through which the District chose to present their testimony. No reasonable finder of fact could conclude that the District was unaware of her interest in having witnesses appear after the November 16 hearing. The District's only argument to the contrary seems to be that T.T.'s mother was obligated to use a particular series of words to request the presence of the witnesses. The court finds no merit in the District's argument that T.T.'s mother failed to use the magic words. T.T.'s mother's questions and statements at the November 16 hearing were adequate as a matter of law to constitute a request for the production of witnesses. Moreover, the evidence establishes that neither T.T. nor his mother knew the names of the two office employee witnesses, because the District withheld their names.

There is no evidence that T.T. or his mother made a follow-up request for witness testimony in the time between the November 16 hearing and the December 14 de novo hearing. At the beginning of the de novo hearing, however, she again emphasized the District's failure to produce witnesses:

> Initially during the [November 16] hearing, there were no witnesses that were actually provided at the hearing. I did receive a copy of a witness statement; however, the signature lines were blocked out on the witness statement. And so therefore I didn't even have a chance to be able to inquire with these people any kind of information, to ask them for any kind of clarification.

Dec. 14 Tr. at 9. She even cited the applicable regulations:

ORDER – 8

> As per the WACS, . . . , I do have a right to question any kind of witnesses that the School District is choosing to present to come to their decision, to come to their conclusion. With no witnesses even being asked to attend the hearing, I didn't receive that kind of opportunity to be able to do that, or any kind of clarification.

*Id.* at 10. The officer presiding over the appeal responded to T.T.'s mother's concerns:

> So what happened in the first hearing was not that the witnesses were called. It's true that decisions were made relying on those witnesses, but they weren't called by the District, and as near as I can tell from what you said, you didn't call them either, you didn't ask that they be there.

*Id.* at 29.

T.T.'s mother protested that she "had no idea who [the witnesses] were," and stated that "it's actually the School District's duty to do their best to have the witnesses present." *Id.* at 30. The appeal officer sympathized with her concerns, but dismissed them.

> So, I'm not trying to argue from your sense of justice, because I – if I were sitting where you are sitting, I'd feel the same way. I'm just saying that the school isn't obligated in the way that you just described to do that. . . . Fair or not, that's just the way it is.

*Id.* In other words, the District acknowledged and rejected T.T.'s request to confront the witnesses against him. No reasonable factfinder could conclude otherwise.

**C.   Constrained By the Ninth Circuit's Mandate, the Court Concludes That Washington Regulations Created a Constitutionally Cognizable Property Interest In T.T.'s Right to Confront Witnesses.**

Having addressed the panel's factual questions, the court follows the memorandum's instructions and proceeds to the legal question. Mem. at 3 ("Once further fact finding has resolved these issues, the district court will be able to consider whether T.T. had a property right in the process afforded under Washington law.").

If it were addressing the question without guidance from the panel, the court would conclude that T.T. had no property right in the process Washington law affords him. This is so because, so far as the court is aware, neither the Ninth Circuit nor any

ORDER – 9

other federal appeals court has found a property right to process guaranteed solely by state law.  A panel explained why in *Clemente v. United States*, 766 F.2d 1358 (9th Cir. 1985).  Reversing a district court that had "grounded its finding of a deprivation of due process in the Air Force's failure to follow its own regulations," the panel explained that even though the Air Force had not followed regulations, "such procedural requirements, without more, do not create cognizable property interests." *Id.* at 1364.  Holding otherwise, the panel noted, "would immediately incorporate virtually every regulation into the Constitution."  The panel thought that result unacceptable, whether applied to federal or state regulations: "It goes without saying that it would be neither sound law nor desirable policy to constitutionalize every state . . . regulation." *Id.* at 1364 n.8 (quoting *Wakinekona v. Olim*, 664 F.2d 708, 712 n.4 (9th Cir. 1981)) (ellipses in *Clemente*).  The *Clemente* panel also favorably cited Seventh Circuit precedent:

> Constitutionalizing every state procedural right would stand any due process analysis on its head.  Instead of identifying the substantive interest at stake and then ascertaining what process is due to the individual before he can be deprived of that interest, the process is viewed as substantive end in itself.

*Clemente*, 766 F.2d 1358, 1364 n.8 (quoting *Shango v. Jurich*, 681 F.2d 1091, 1101 (7th Cir. 1992)).  The Seventh Circuit has held to that view.  *Osteen v. Henley*, 13 F.3d 221, 225 (7th Cir. 1993) ("As we tirelessly but unavailingly remind counsel in this court, a violation of state law . . . is not a denial of due process, even if the state law confers a procedural right.").  Judge Coughenour reached the same conclusion.  Dkt. # 37 at 10-11 (citing precedent from Second, Fourth, Fifth, Sixth, and Tenth Circuit).

The panel found error in Judge Coughenour's failure to consider "whether the Washington Administrative Code . . . gave T.T. a reasonable expectation of a protected entitlement because the mandatory nature of the Code sections created a significant substantive restriction on the school district's decision making." Mem. at 2-3.  The panel directed the court to *Wedges/Ledges of California, Inc. v. City of Phoenix*, 24 F.3d 56,

ORDER – 10

62-63 (9th Cir. 1994).  *Wedges/Ledges* did not address whether anyone had a constitutional interest in state procedures, but rather whether the existence of procedures to protect a substantive interest transformed that interest into a constitutionally cognizable property interest.  The *Wedges/Ledges* panel found a constitutionally protected property interest in state licenses for coin-operated games of skill, based on state regulations that governed the granting of those licenses.  *Id.* at 62-63.  It found no protected interest in the state procedures themselves.  It instead remanded for the district court to consider "what procedural safeguards and remedies were made available . . . under the Phoenix City Code and under state law, and whether those procedures were constitutionally adequate."  *Id.* at 64.  The *Wedges/Ledges* panel, consistent with all appellate precedent of which this court is aware, held that while state procedures can give rise to constitutionally protected interests, the Constitution, not state law, determines the adequacy of the procedures themselves.  *See also Bautista v. Crowley*, No. 95-17077, 1997 U.S. App. LEXIS 5182, at *6 (9th Cir. Mar. 17, 1997) ("To recognize a constitutionally protected interest in the procedures themselves . . . would stand the due process analysis on its head. . . . Appellant cannot have a property interest in process alone.").

    This court could consider whether Washington's regulations governing suspension create a protected property interest in remaining in school.  But there is no need to do so, because it is settled law that students have a protected property interest in receiving a public education.  Judge Coughenour recognized as much, and the panel affirmed his conclusion.  Mem. at 2 ("As a threshold consideration, we affirm the district court's conclusion that T.T. has a protected property interest in receiving a public education.") (citing *Goss v. Lopez*, 419 U.S. 565, 573 (1975)).

    Instead, the panel has asked this court to determine if T.T. had a protected property interest in the process set out in Washington regulations, particularly in the right

ORDER – 11

1    to confront witnesses.  It directed the court to take guidance from *Wedges/Ledges*, and the

2    court now does so.

3          *Wedges/Ledges* instructs courts to consider "the language of a statute [or

4    regulation] and the extent to which the entitlement is couched in mandatory terms."  24

5    F.3d at 62 (citation omitted).  In this case, the Washington regulations governing the right

6    to confront witnesses in suspension proceedings are written in mandatory language.  If a

7    student requests a hearing, the "student and his or her parent(s) or guardian(s) *shall* have

8    the right to" numerous procedural safeguards, including the right to:

> Question and confront witnesses, unless a school district witness does not
> appear and the nonappearance of the witness is excused by the person(s)
> hearing the case based upon evidence of good reason for doing so
> submitted by the school district.  The evidence submitted by the school
> district *must* at a minimum establish either:
>
> > (i) That the district made a reasonable effort to produce the witness
> > and is unable to do so; or,
> >
> > (ii) That it is not advisable for the student to appear due to an
> > expectation and fear on the part of the responsible district official(s)
> > or the student of retaliation against the student if he or she appears as
> > a witness.

17   WAC § 392-400-270(1)(c) (emphasis added).[3]  The regulation is mandatory.  *See*

18   *Wedges/Ledges*, 24 F.3d at 63 (finding the word "shall" in a regulation is "explicitly

19   mandatory language").

20         The second *Wedges/Ledges* inquiry is whether the mandatory language operates as

21   a "significant substantive restriction" on the District's discretion.  *Id.* at 63.  In answering

22   the question, the court focuses on whether the regulation's criteria significantly restrict

23   the District's discretion to decline to produce witnesses, not whether it significantly

24   restricts the District's discretion in reaching an ultimate determination as to a suspension.

---

[3] In a de novo appeal hearing, like the one the District admits it conducted on December 14, the
applicable regulation uses identical language regarding the student's right to confront witnesses.
WAC § 392-400-315(2)(a)(ii).

ORDER – 12

Were it otherwise, the court would be determining whether a T.T. has a constitutionally protected interest in remaining in school.  As noted, the Supreme Court and the panel have already decided that issue.

The regulation limits the District's discretion to refuse to produce a witness.  The District *must* produce a witness unless it has a "good reason."  A "good reason" is not whatever reason the District prefers, but rather is "at a minimum" a showing that it cannot produce the witness after reasonable effort, or that the witness faces retaliation.  The retaliation exception, moreover, applies only to *student* witnesses, whom the District can choose not to produce if it concludes they face retaliation.  There is no indication that the exception applies to non-student witnesses.  When the District makes the substantive decision about whether to produce witnesses at a hearing (or de novo appeal hearing), Washington regulations act as significant restrictions on that decision.  Accordingly, the court concludes that the regulations create a constitutionally cognizable property interest in the right to confront witnesses.

To the extent it is relevant, the court concludes as a matter of law that the District did not comply with Washington regulations requiring it to produce witnesses.  There is no evidence that it attempted to produce witnesses and was unable to do so.  As to the possibility of retaliation, the sole fragment of the record that raises this issue is Ms. Siegwarth's testimony at the November 16 hearing that the signatures on the witness statement that Officer Mills obtained were redacted because the "witnesses were fearful of retaliation."  Nov. 16 Tr. at 23.  Again, the court finds that the regulation's protections for witnesses who might face retaliation apply only to student witnesses.  Even if those protections apply more broadly, Ms. Siegwarth's conclusory statement is inadequate to support the conclusion that any witness faced retaliation.

The court also finds, to the extent it is relevant, that T.T.'s mother's alleged failure to request the presence of witnesses is irrelevant under Washington law.  The regulations place no obligation on T.T. to request the testimony of the District's witnesses.  There is

ORDER – 13

no reason to infer such a requirement.  But even if T.T. was required to request witnesses against him, the court has already found that his mother did so at the November 16 hearing.  At least with respect to the December 14 hearing, the District was aware that she had requested witnesses.  It made no attempt to produce them.

Although the court reaches conclusions on state law in the event that a reviewing court disagrees, the court finds that the District's failure to follow Washington regulations is not relevant.  As the court has already noted, even where state law creates a constitutionally cognizable property interest, it is the Due Process Clause alone that dictates the minimum process due before depriving a plaintiff of that interest.

The court concludes that the District's deprivation of T.T.'s right to confront witnesses against him did not comport with the Due Process Clause.  The court reaches this conclusion without examining precisely the process to which T.T. was constitutionally entitled.  He was entitled to *some* process before being deprived of his right to confront witnesses.  He received none.  The District declined to produce witnesses against him, and no reason for doing so appears from the record.  Despite the numerous formal and informal hearings he attended, there is no indication that the District gave consideration to his right to confront witnesses.  It accordingly deprived him of that right without due process.

Before moving away from the due process issues, the court emphasizes that its conclusion that T.T. has a constitutionally cognizable property interest in his state law right to confront witnesses is in large part compelled by the mandate in this case.  Along with the right to confront witnesses, Washington suspension regulations create numerous other procedural entitlements, including the right to inspect evidence in advance, the right to a verbatim record of the hearing, the right to a written decision with specified contents, and the right to a particular timetable.  *E.g.* WAC § 392-400-270.  All of these regulations use "shall" or other mandatory language.  Those regulations invariably constrain the District's discretion to deny those procedural benefits.  Indeed, unlike the

ORDER – 14

regulations regarding the confrontation of witnesses, the regulations generally grant no discretion at all to refuse to provide various procedures.  Thus, to the extent that a student wished to raise a constitutional claim based on, for example, the District's failure to provide a hearing within "three school business days" of a request, WAC § 392-400-270(1), the mandate in this case would seem to permit him to do so.  In other words, the mandate seems to abide the constitutionalization of Washington regulations on suspension.  These are not speculative concerns.  T.T. has made precisely that argument on remand:

> Although the school district addresses only the student's right to question and confront witnesses as a potential property interest established by the state statutes and regulations[,] *the student asserts that all of the applicable statutes and regulations create such interests* and that the school district failed or refused to comply with many of them, thereby committing multiple due process violations.

Pltf.'s Opp'n (Dkt. # 69) at 11 n.13 (emphasis added).  Indeed, much of T.T.'s current motion is dedicated to asserting Due Process violations arising from numerous alleged violations of Washington regulations having nothing to do with the confrontation of witnesses.  The court does not discuss those assertions for the reasons it has already stated; it reaches the same conclusions that Judge Coughenour reached.

The court acknowledges, finally, that its concerns in this case may stem from a misinterpretation of the panel's memorandum or misconstruction of its mandate.  It may well be that the panel found something distinctive about regulations governing a student's confrontation right that this court has failed to appreciate.  Nonetheless, given well-established concerns about constitutionalizing state procedural rules, the court has endeavored to be explicit about its effort to comply with the mandate.

**D.     The District Is Vicariously Liable For the Acts of the Appeal Council, and May Be Liable for the Acts of Mr. Hasslinger.**

Courts have limited the circumstances in which local governing bodies, including school boards, face § 1983 liability.  *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004)

ORDER – 15

(citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).  The District is liable in this case if one of its agents deprived T.T. of his right to confront witnesses in accordance with an "expressly adopted official policy" or "longstanding practice or custom."  *Lytle*, 382 F.3d at 982.  It is also liable if the person or persons who deprived T.T. of that right were final policymakers for the District.  *Id.*

There is no evidence of any expressly adopted official policy as to the right to confront witnesses.  There is evidence suggesting that the District's practice and custom is to produce witnesses supporting its allegations not in accordance with state regulations, but rather at its own discretion.  The appeal hearing officer dismissed T.T.'s mother's concerns about the lack of witnesses by saying "the school really isn't obligated in the way you just described to do that. . . . Fair or not, that's just the way it is."  Dec. 14 Tr. at 30.  Both Ms. Collins and Mr. Hasslinger, the District's hearing officer, have submitted declarations stating that they believed they had no obligation to produce the witnesses on which the District relied absent a request from T.T.  Dkt. ## 54-55.

Ultimately, however, the court need not decide whether the District acted in accordance with its formal or informal policy, because the people who made the decision to deny T.T. his right to confront witnesses were District policymakers.

There is no question that the Appeal Council, one of the bodies that declined to produce witnesses, has policymaking authority with respect to the conduct of hearings.  The District's board has policymaking authority for the District.  RCW 28A.320.015.  It can delegate that authority.  By law, the Appeal Council is the District's designee to "hear and decide long-term suspension and expulsion appeals."  WAC § 392-400-310.  State law is the first source of policymaking authority to which a court looks when determining if an actor is a policymaker.  *Lytle*, 382 F.3d at 982.  Here, state law gives the Appeal Council authority as to the procedure to follow in appeal hearings.  When the Appeal Council did not produce witnesses against T.T., it acted for the District.

ORDER – 16

Mr. Hasslinger, who presided at the November 16 hearing, describes himself as the District's hearing officer. There is no suggestion that the District employs other hearing officers. There is no express statutory or regulatory provision granting him policymaking authority. Nonetheless, he is a policymaker if he has a position of authority in a particular area such that his decisions in that area may be appropriately attributed to the District. *Lytle*, 382 F.3d at 983. A jury could conclude that with respect to decisions on the conduct of an initial disciplinary hearing, Mr. Hasslinger as hearing officer had full authority to act as he saw fit. Certainly there is no evidence that the District constrained his actions. Under these circumstances, there is a jury question as to whether his decision to permit the school to present its case without witnesses can be attributed to the District.

**E.   T.T. May Proceed in This Matter Without His Mother as His Representative.**

T.T. was a minor when this suit began. His mother sued on his behalf in King County Superior Court, acting as a nominal party protecting his interests. She and he identified themselves only by their initials. They continued that practice after the District removed the case to this court, and the District raised no objection.

Just a few months ago, T.T. became an adult in the eyes of the law. His mother thus moves to withdraw as his representative, and substitute T.T. (who has always been the real party in interest) in her place. The District raises no objection, sensibly enough. The District objects, however, to T.T. continuing to use only his initials, rather than his full name. The District notes that Fed. R. Civ. P. 5.2(a)(3), which mandates the use of initials for minor litigants, does not apply to adults. The District did not raise its objection to adults using their initials before this court at any time in the last two years, during which T.T.'s mother has used only her initials. Other than its citation to Rule 5.2(a) and a citation to state procedural rules that do not apply in federal court, the District offers no reason for its objection. Nor does it cite any authority for the proposition that a minor litigant proceeding anonymously must be unmasked the moment

ORDER – 17

he or she reaches the age of majority.  The events that precipitated this litigation occurred when T.T. was a minor, as has the bulk of this litigation.  The court will allow him to continue to pursue relief using only his initials, as the District has offered neither legal authority nor persuasive reasoning for its position.

Accordingly, the court grants T.T.'s motion to substitute, which is in reality nothing more than a motion to have his mother excused as his legal representative.  He has always been the sole Plaintiff in this matter, this order merely clarifies that his mother no longer represents his legal interests.

## IV.  CONCLUSION

For the reasons stated above, the court GRANTS in part and DENIES in part the parties' summary judgment motions (Dkt. ## 52, 58) and GRANTS T.T.'s motion to substitute (Dkt. # 61).  Many of the issues the parties raised in their summary judgment motions are not addressed here, because they are beyond the scope of the Ninth Circuit's mandate.  To the extent that the mandate leaves open any issues beyond those addressed in this order, the court reiterates Judge Coughenour's previous rulings.

With this ruling, it would seem that the sole questions left to be determined are whether Mr. Hasslinger can be deemed a District policymaker with respect to conducting the November 16 hearing, and what damages T.T. sustained as a result of the denial of his right to confront witnesses.  The court directs the parties to meet and confer regarding those issues and any other issues that the parties believe remain.  They shall submit a joint statement to the court no later than January 14, 2011, stating those issues and their proposal for resolving them by trial or another means.

DATED this 13th day of December, 2010.

Richard A Jones

The Honorable Richard A. Jones
United States District Judge

ORDER – 18